**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **CASE NO. 5:25-CR-33 (MTT)** |
| **BRYANT KEITH FLOYD and MARCO MCNARD SMITH** | |
| **Defendants.** | |

# ORDER

On February 19, 2026, Defendant Bryant Keith Floyd pled guilty to conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. ECF 84 at 2. Co-defendant Marco McNard Smith pled guilty to distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). ECF 82 at 2. The Government has objected to their respective Presentence Investigation Reports' ("PSR") conclusions that neither is a career offender under U.S.S.G. § 4B1.1. ECF 97; 98. For the following reasons, the Government's objections are **OVERRULED.**

## I. BACKGROUND

On August 11, 2022, as part of a controlled buy, Defendant Floyd sold 83.259 grams of methamphetamine to an undercover Georgia Bureau of Investigation Task Force Officer, Michael Scott. ECF 84 at 11. On August 18, 2022, as part of another controlled buy, Defendant Smith sold Scott 54.5 grams of methamphetamine. ECF 82 at 11. Scott then purchased methamphetamine from Smith on September 29, 2022, October 6, 2022, and October 18, 2022. *Id.* at 11–13.

Smith pled guilty to distribution of methamphetamine. ECF 82 at 2. Smith's PSR reported two prior felony convictions. ECF 107 ¶¶ 43–44, 47–48. Relevant here, Smith pled guilty in 2017 to the Georgia offense of possession of methamphetamine with intent to distribute as a party to the commission of a crime. *Id.* ¶¶ 47–48. Georgia's "party to a crime" offense is an inchoate offense that encompasses directly committing it, intentionally causing another to commit it, intentionally aiding or abetting its commission, or intentionally encouraging or procuring another to commit it. *See* O.C.G.A. § 16-2-20(b)(1)–(4).

Floyd pled guilty to conspiracy to possess with intent to distribute methamphetamine. ECF 84 at 2. Floyd's PSR also reported that Floyd had two prior felony convictions, both of which are controlled substance offenses. ECF 106 ¶¶ 42–43, 52–53.

The Probation Office concluded that both Defendants should be sentenced under the 2021 Guidelines to avoid an ex post facto violation. ECF 89 ¶ 17; 90 ¶ 20; 106 ¶ 17; 107 ¶ 20. Specifically, the Probation Office noted that under the current Guidelines, Smith and Floyd would have been designated as career offenders because each had two prior felony convictions for "crimes of violence" or "controlled substance offenses," as well as a qualifying offense of conviction. ECF 89 at 7 n.1.; ECF 90 at 8 n.1. But under the 2021 Guidelines, as interpreted by the Eleventh Circuit in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (*en banc*), neither Smith's party to a crime offense nor Floyd's conspiracy conviction—both inchoate offenses—would qualify as a controlled substance offense. ECF 89 at 7 n.1.; ECF 90 at 8 n.1. If the Court applied the current Guidelines, including the career offender enhancement, Smith's total offense

level would increase from 23 to 34, increasing his Guidelines sentencing range from 70 to 87 months to 262 to 327 months. ECF 107-1 at 1. Floyd's total offense level would increase from 27 to 34, increasing his Guidelines sentencing range from 100 to 125 months to 300[1] to 327 months. ECF 106-1 at 1. Thus, because application of the current Guidelines would result in harsher punishment, the Probation Office concluded that both Defendants should be sentenced under the 2021 Guidelines. ECF 89 ¶ 17; 90 ¶ 20; 106 ¶ 17; 107 ¶ 20.

As noted, the Probation Office based its reasoning on *Dupree*. There, the Eleventh Circuit, applying the 2021 Guidelines, held that U.S.S.G. § 4B1.2's definition of a "controlled substance offense," unambiguously excluded inchoate offenses. 57 F.4th at 1279. Thus, because Dupree's offense of conviction—conspiracy to possess with intent to distribute heroin and cocaine—was an inchoate offense, Dupree was not convicted of a controlled substance offense. *Id.* at 1271. Therefore, Dupree was not a career offender. *Id.* at 1280. The Court reasoned that although the commentary to § 4B1.2 stated that inchoate offenses were included in the definition of a controlled substance offense, under *Kisor v. Wilkie*, 588 U.S. 558 (2019), the Court should not defer to that commentary because the Guideline unambiguously excluded inchoate offenses from the definition of a controlled substance offense. *Dupree*, 57 F.4th at 1273–80. In short, a defendant sentenced under the 2021 Sentencing Guidelines could not be a career offender based on an inchoate drug offense.

[1] The Probation Office noted that an offense level of 34 would yield a Guidelines sentencing range of 262 to 327 months. ECF 106-1 at 1. However, Floyd would be subject to a statutory minimum sentence of 300 months. *Id.*

Then, on November 1, 2023, the Sentencing Commission promulgated Amendment 822, changing § 4B1.2's definition of controlled substance offense to include inchoate offenses. *See* U.S.S.G. § 4B1.2(d). That means that, under the current Guidelines, both Floyd and Smith would be career offenders, and they would be subject to harsher sentences. That is why the Probation Office concluded that both Defendants should be sentenced under the 2021 Guidelines. ECF 89 ¶ 17; 90 ¶ 20. The Government objected. ECF 97; 98.

In its original objection, the Government argued that the Defendants would be subject to the career offender enhancement under both the 2021 and current Guidelines because *Dupree*, decided in 2023, was not retroactive and, therefore, would not apply to the Defendants' 2022 offense. ECF 97 at 2–3; 98 at 2–3. However, the Government relied on cases decided on collateral review, which the Court found unpersuasive because Smith and Floyd have not yet been sentenced. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (distinguishing retroactivity principles applicable on direct and collateral review); *see also United States v. Davis*, 2024 WL 4765852, at *2 (11th Cir. Nov. 13, 2024) (recognizing the Government's concession that, unlike cases on collateral review, *Dupree* applied because the defendant's case was on direct appeal). Thus, the Court ordered the parties to submit supplemental briefs addressing whether the Court must apply the 2021 Guidelines, as interpreted by *Dupree*, when the Defendants are sentenced. ECF 119 at 13:25–14:20.

## II. STANDARD

Generally, a court must apply the Guidelines in effect at the time of sentencing. *United States v. Kapordelis*, 569 F.3d 1291, 1314 (11th Cir. 2009); *United States v.*

*Brown*, 2026 WL 2652167, at *6 (11th Cir. Sept. 9, 2026). However, "[p]ursuant to the Ex Post Facto Clause, if applying the Guidelines in effect at the time of sentencing would result in a harsher penalty, a defendant must be sentenced under the Guidelines in effect at the time when he committed the offense." *Kapordelis*, 569 F.3d at 1314; *Peugh v. United States*, 569 U.S. 530, 533 (2013); *United States v. Simmons*, 368 F.3d 1335, 1338 (11th Cir. 2004). "The primary consideration in finding an *ex post facto* violation is whether punitive enactments have failed to give individuals fair warning of their effect." *United States v. Summers*, 176 F.3d 1328, 1330 (11th Cir. 1999) (citing *Weaver v. Graham,* 450 U.S. 24, 28–31 (1981)). But when a Court applies an earlier edition of the Guidelines Manual to avoid an ex post facto violation, "the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." U.S.S.G. § 1B1.11(b)(2). "A clarifying amendment applies retroactively because rather than *change* a Guideline's meaning, it simply *confirms* its preexisting meaning." *United States v. Brown*, 2026 WL 3023730, at *5 (11th Cir. Oct. 8, 2026) (emphasis in original). "Substantive amendments to the Guidelines, on the other hand, are not applied retroactively on direct appeal." *United States v. Jerchower*, 631 F.3d 1181, 1184 (11th Cir. 2011).

## III. DISCUSSION

In its supplemental brief, the Government agrees that if the Court applies the 2021 Sentencing Guidelines*, Dupree*'s interpretation of "controlled substance offense" would control the Court's analysis and, thus, the Defendants will not be subject to the career offender enhancement. ECF 122 at 11. However, the Government now argues that the 2021 Sentencing Guidelines do not apply because Amendment 822's

expansion of the definition of controlled substance offense was "clarifying" rather than substantive and, therefore, no ex post facto concerns exist. ECF 122 at 5–11.

In *United States v. Brown*, handed down after the parties' briefing, the Eleventh Circuit confirmed that "[a] clarifying amendment applies retroactively because rather than *change* a Guideline's meaning, it simply *confirms* its preexisting meaning." 2026 WL 3023730, at *5 (11th Cir. Oct. 8, 2026) (emphasis in original). If the Court could stop there, and on the unique circumstances here, it seems that is where the Court should stop, the Government's objections fail. That is because the Eleventh Circuit all but told us in *Dupree* that Amendment 822's incorporation of inchoate offenses into the definition of controlled substance offense cannot be clarifying. 57 F.4th at 1279. Because *Dupree* held that the pre-amendment text unambiguously excluded inchoate offenses, expressly including those offenses in the amended text necessarily changed, rather than clarified, the Guideline's meaning. *See Dupree*, 57 F.4th at 1278 ("[T]he Commission purported 'to add an offense not listed in the Guideline.'") (quoting *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (citation modified)); *see also United States v. Johnson*, 2026 WL 3070131, at *3 (11th Cir. Oct. 14, 2026) ("To read an attempt version of these enumerated offenses into the definition would improperly '*add* an offense not listed in the Guideline[s].'" (quoting *Dupree*, 57 F.4th at 1278)).

The parties have found no decision addressing whether an amendment can be "clarifying" when binding precedent has held that the pre-amendment text unambiguously excludes the very offenses the amendment subsequently incorporates. Nor has the Court. Perhaps the Court should overrule the Government's objection and stop there. But the parties continue, so the Court does too.

The Government relies heavily on *United States v. Irons*, which addressed the career offender enhancement for "crime of violence." 176 F.4th 1275 (11th Cir. 2026). Irons had been sentenced as a career offender based on an attempted carjacking predicate offense. *Id.* at 1280. As it did with the definition of "controlled substance offense," Amendment 822 moved language from the commentary to define "crime of violence" to include inchoate offenses. *Id.* at 1281–82; U.S.S.G. § 4B1.2(d). But unlike the pre-Amendment 822 definition of "controlled substance offense," which made no reference to inchoate offenses, the pre-amendment definition of "crime of violence" expressly referenced offenses that have an element of the *attempted* use of physical force. *See* U.S.S.G. § 4B1.2(a)(1) ("The term 'crime of violence' means any offense … that … has as an element the use, *attempted* use, or threatened use of physical force against the person of another.") (emphasis added); *Irons*, 176 F.4th at 1281.[2] Accordingly, the Court in *Irons* concluded that the district court did not plainly err in applying the amended Guideline because Amendment 822 "plausibly" clarified the meaning of crime of violence. *Id.* at 1281–82. The Court reasoned that it was not "obvious" that Irons's pre-Amendment 822 sentence under the 2021 Guidelines would be different than a post-Amendment 822 sentence, in part because the 2021 Guidelines expressly contemplated offenses involving the attempted use of physical force.[3] *Id.* at

[2] Under the 2021 Guidelines, § 4B1.2(a)(1) did not include all attempted crimes of violence. Attempt offenses only qualified if their elements always required the government to prove "beyond a reasonable doubt, as an element of its case," the use, attempted use, or threatened use of physical force. *See Johnson*, 2026 WL 3070131, at *3 (quoting *United States v. Taylor*, 596 U.S. 845, 850 (2022)). *Johnson* held that, like in *Dupree*, the pre-Amendment enumerated offenses clause in § 4B1.2(a)(2) unambiguously excluded inchoate offenses. *Id.* at *3.

[3] The Court's reference to an "obvious" difference between the pre-amendment and post-amendment sentences refers to the plain error standard of review applicable in *Irons*. 176 F.4th at 1281. The relevant inquiry for whether an ex post facto violation occurs remains whether the Guidelines in effect at sentencing would result in a harsher penalty than those at the time of the commission of the crime. *See*

1281–82. Floyd and Smith's sentences would differ under the 2021 Guidelines because, unlike the "crime of violence" definition at issue in *Irons*, the pre-Amendment "controlled substance offense" definition included no reference to inchoate offenses, and *Dupree* establishes that those offenses were excluded from the definition.[4] 57 F.4th at 1277.

Because *Irons* provides no answer,[5] the Court, still assuming for now that *Dupree* has not answered the question, turns to the Eleventh Circuit's four-factor framework to determine whether Amendment 822 is clarifying, and thus can be applied retroactively, or substantive, and thus cannot be.

> In assessing whether an amendment to the Sentencing Guidelines is substantive or clarifying, this Court considers several factors. First, we look to whether the amendment alters the text of the Guideline or alters only the commentary.… Second, this Court looks to whether the Commission has described an amendment as clarifying or whether its statements in the amendment commentary reflect a substantive change in the punishment for an offense. Third, we examine whether the Commission has included the amendment in the list of retroactive amendments in § 1B1.10[(d)]. Finally, we have noted that an amendment overturning circuit precedent suggests a substantive change, but that such an amendment could be considered clarifying if it clarifies a meaning that was inherent in the original Guideline.

*Jerchower*, 631 F.3d at 1185 (citations omitted and modified).

---

*Peugh v. United States*, 569 U.S. 530, 533 (2013); *United States v. Brown*, 2026 WL 2652167, at *6 (11th Cir. Sept. 9, 2026).

[4] The Court in *Irons* also distinguished *Dupree*, explaining that *Dupree* interpreted a pre-amendment definition of "controlled substance offense," rather than the "crime of violence" definition at issue in *Irons.* 176 F.4th at 1282.

[5] The Government also points to *United States v. Ott*, 166 F.4th 116 (11th Cir. 2026). But *Ott* involved a "crime of violence," and the Eleventh Circuit acknowledged that § 4B1.2(a)(1) already provided that offenses with an "element … [of] attempted use" of physical force could constitute a crime of violence. *Id.* at 119–20.

**A. Whether the Amendment Alters the Text of the Guideline**

"An amendment that alters the text of the Guideline itself suggests a substantive change, while an amendment that alters only the commentary suggests a clarification." *Jerchower*, 631 F.3d at 1185 (internal citations omitted); *Summers*, 176 F.3d at 1331; *United States v. Armstrong*, 347 F.3d 905, 908 n.6 (11th Cir. 2003) ("Amendments to the commentary are clarifying amendments.").

This factor seems to be controlled by *Dupree*—Amendment 822 clearly altered the text of the Guideline. But the Government argues that the Amendment does not alter the Guideline's text because it merely moved commentary into the text. ECF 122 at 8. The Government relies on *United States v. Horn*, but it too is distinguishable. 129 F.4th 1275 (11th Cir. 2025). In *Horn*, the Court noted that an amendment moved "longstanding commentary to the text," which weighed in favor of treating the amendment as clarifying. *Id.* at 1300. As in *Irons*, the Court in *Horn* concluded that the pre-amendment Guideline would not have been interpreted any differently than the post-amendment Guideline. *See Horn*, 129 F.4th at 1300; Irons, 176 F.4th at 1281. Again, the pre- and post-amendment Guidelines would be interpreted differently in this case.

The circumstances in *Horn* also provided much stronger indications of a clarifying amendment than those present here. There, the Commission relocated text from the commentary into the Guideline but placed it under a section titled "notes." *Id.* at 1300–01. The Eleventh Circuit concluded that Amendment 827's "characterization of the relocated text" as a note "suggests that it is meant to explain the text of the Guideline, not to alter it." *Id.* at 1300. Here, however, the Commission moved commentary into the

Guideline and did so “to add an offense not listed in the Guideline.” *Dupree*, 57 F.4th at 1278 (citation modified); *see* U.S.S.G. § 4B1.2(d).

The Government also relies on *Brown*, which held that the first factor weighed in favor of a clarifying change because Amendment 832 replaced existing language and incorporated an exemplary clause from the commentary into the Guideline’s text. 2026 WL 3023730, at *5. But the Court is not persuaded that *Brown* supports treating the incorporation of this particular commentary into the Guideline’s text as a clarifying change. Unlike Amendment 832, which moved commentary to explain the meaning of existing language, Amendment 822 moved commentary to include a category of offenses that the pre-amendment text, as interpreted by *Dupree*, unambiguously excluded. *Brown*, 2026 WL 3023730, at *5.

Smith[6] argues that moving the commentary into the Guideline altered the text because Amendment 822 added a list of crimes to the definition of “controlled substance offense.” ECF 123 at 6–7. The Court agrees. In *United States v. Handlon*, the Eleventh Circuit concluded that an amendment to U.S.S.G. § 1B1.13 was substantive rather than clarifying because it “altered the text of the guideline itself to allow for compassionate release in a new circumstance.”[7] 97 F.4th 829, 833 (11th Cir. 2024). There, the Commission added a subsection to § 1B1.13(b)(3) to allow for compassionate release based on a parent’s incapacitation when the defendant is the

---

[6] Only Smith filed a brief addressing the issue. ECF 123. Floyd presumably is riding his coattails.

[7] Other language used by the Eleventh Circuit supports Smith’s argument. *See, e.g.*, *Ott*, 166 F.4th at 119 (“The Commission soon passed an amendment, sweeping in a broad variety of inchoate crimes.”); *Johnson*, 2026 WL 3070131, at *3 (“To read an attempt version of these enumerated offenses into the definition would improperly ‘*add* an offense not listed in the Guideline[s].’” (quoting *Dupree*, 57 F.4th at 1278).

only available caregiver. U.S.S.G. § 1B1.13(b)(3)(C). Similarly, Amendment 822 added a subsection to include inchoate crimes as qualifying offenses for the career offender enhancement. Because *Dupree* held that the pre-Amendment 822 Guidelines unambiguously excluded inchoate crimes from the list of qualifying predicate offenses, the Amendment "altered the text of the guideline to allow" for a career offender finding "in a new circumstance." *Handlon*, 97 F.4th at 833.

Thus, the first factor weighs heavily in favor of finding Amendment 822 substantive.

**B. Whether the Commission has Described the Amendment as Clarifying**

"Second, this Court looks to whether the Commission has described an amendment as clarifying or whether its statements in the amendment commentary reflect a substantive change in the punishment for an offense." *Jerchower*, 631 F.3d at 1185 (citing *United States v. Descent*, 292 F.3d 703, 708–09 (11th Cir. 2002)). The Government argues that this factor weighs in favor of treating Amendment 822 as clarifying because the Commission adopted it "to 'address a circuit conflict regarding authoritative weight afforded to certain commentary to § 4B1.2.'" ECF 122 at 8 (quoting United States Sentencing Commission, *Guidelines Manual,* Supp. to App. C, at 256 (Nov. 2023)). That consideration provides limited support for the Government's position. The circuit conflict the Commission identified was not simply a disagreement over whether inchoate offenses fell within § 4B1.2(b). Rather, the Commission characterized the conflict as concerning the "authoritative weight" courts could afford commentary. *See Ott*, 166 F.4th at 119 n.1 ("The Commission [adopted Amendment 822] in response

to disagreement among the circuit courts about how much weight to afford Guidelines commentary.”).

Smith counters that the Commission did not characterize the relevant portion of Amendment 822 as substantive or clarifying. ECF 123 at 7. Yet, the Commission expressly described another change made by Amendment 822 as clarifying. *Id.* In discussing the Amendment’s revised definition of “robbery,” the Commission stated that “[t]he amendment *clarifies* that ‘actual or threatened force’ … is ‘force sufficient to overcome a victim’s resistance.’” *Id.* (quoting United States Sentencing Commission, *Guidelines Manual,* Supp. to App. C, at 247 (Nov. 2023)).

Similarly, when explaining other amendments promulgated at the same time, the Commission expressly stated that it did not intend to make a substantive change. For example, the Commission said one amendment was for “technical, stylistic, and other non-substantive changes.” United States Sentencing Commission, *Guidelines Manual,* Supp. to App. C, at 258 (Nov. 2023).[8] Thus, although the Commission’s failure to use the word “clarify” regarding the inchoate-offense change is not dispositive,[9] its stated purpose of resolving a circuit split, without further indication that it intended merely to clarify the existing Guideline, provides little support for concluding that the Commission regarded the change as clarifying.

In *Horn*, where the Eleventh Circuit found that the second factor weighed in favor of treating a change as clarifying, the Commission said the reason for the amendment

[8] In another instance, the Commission stated that in making a change, it “did not make substantive revisions.” United States Sentencing Commission, *Guidelines Manual,* Supp. to App. C, at 260 (Nov. 2023). In yet another, the Commission stated it made “only non-substantive changes.” *Id.* at 223.

[9] Of course, the Commission is not required to use “any magic-words recitation.” *Brown*, 2026 WL 3023730, at *6 n.4.

was to "maintain the status quo" and "ensur[e] consistent loss calculation across circuits" after one circuit departed from the approach followed by the other circuits. 129 F.4th at 1301 (citation modified). Notably, the Commission also appeared to "reserve a potential substantive change in the future," explaining that it might address the broader issue in a later amendment cycle. *Id.* Here, unlike in *Horn*, there was no similar language reserving a potential substantive change for a later amendment cycle.

In *Brown*, the Eleventh Circuit concluded that the Commission's intention to resolve a circuit split through Amendment 832 weighed in favor of treating the Amendment as clarifying. 2026 WL 3023730, at *6. But again, unlike the disagreement addressed in *Brown*, the circuit conflict addressed by Amendment 822 did not concern merely competing interpretations of an existing textual requirement. It concerned the weight to give commentary, a question governed by judicial principles of interpretation and deference. *See Kisor*, 588 U.S. at 575–80. The Commission resolved the practical consequences of the disagreement with Amendment 822, but it did not resolve the underlying question of deference.

On balance, the Court finds that this factor provides, at most, limited support for treating Amendment 822 as clarifying.

**C. Whether the Amendment is Retroactive**

Third, the Court considers "whether the Commission has included the amendment in the list of retroactive amendments in U.S.S.G. § 1B1.10(d)." *Horn*, 129 F.4th at 1300 (citation modified). Amendment 822 is not included. Smith argues that because the Commission "easily could have done so" but did not, the third factor weighs in his favor. ECF 123 at 7–8. The Government argues that this factor does not weigh

heavily because § 1B1.10 concerns only sentences that have already become final on direct review and could possibly result in a sentence reduction under 18 U.S.C. § 3582(c). ECF 122 at 9–10.

The Court agrees with the Government.[10] Indeed, in *Brown*, the Eleventh Circuit questioned the relevance of this factor, noting that *Descent*, 292 F.3d 703, 709 (11th Cir. 2002), cited no authority for the proposition that omission in §1B1.10(d) indicates an amendment's substantive nature. 2026 WL 3023730, at *6 n.5. But the Eleventh Circuit concluded that *Descent* remains binding and held that the omission weighed in favor of treating the amendment as substantive, so this Court follows suit. *Id.*

Accordingly, although the third factor weighs in favor of treating Amendment 822 as substantive, it does so only slightly.[11]

**D. Whether the Amendment Overturns Circuit Precedent**

Finally, the fourth factor asks whether the amendment overturns circuit precedent. "[W]e have noted that an amendment overturning circuit precedent suggests a substantive change, but that such an amendment could be considered clarifying if it 'clarifies a meaning that was inherent in the original Guideline.'" *Horn*, 129 F.4th at 1300 (quoting *Jerchower*, 631 F.3d at 1185). "If that meaning was needed to provide the fair warning required by the Constitution for criminal punishment it must be present with sufficient clarity to satisfy *ex post facto* concerns." *Summers*, 176 F.3d at 1331.

Both the Government and Smith rely on *Summers*. ECF 122 at 10; ECF 123 at 8–9. In *Summers*, the Eleventh Circuit regarded an amendment as substantive where

[10] Recall that the Court rejected the Government's effort to rely on collateral-review cases. ECF 119 at 5:7–5:19.

[11] If the Court were to cut this factor as irrelevant, the Court's end result would not change.

the Commission removed a word from the Guideline.[12] 176 F.3d at 1333. The Court explained that, when removing the word, the Commission was not speaking "to what the meaning" of the Guideline was before the amendment. *Id.* at 1331. Instead, the Commission had to change the language to express its intention clearly. *Id.* The Court contrasted the Commission's removal of a word with two situations that the Eleventh Circuit *would* regard as clarifying. First, if after the defendant had been convicted but before sentencing, the Supreme Court decided that "I have a gun" is an express threat of death, that would be clarifying because it would merely establish what the existing Guideline meant at the time of the offense. *Id.* Second, if, in earlier decisions, the Court "had indicated that it was interpreting ambiguous language and the 'clarification' addressed that ambiguity," that would be clarifying. *Id.*

But that is not what happened in *Summers*, and it is not what happened here. First, no Supreme Court case established that § 4B1.2 included inchoate offenses. Second, the Eleventh Circuit did not earlier indicate that "it was interpreting ambiguous language."[13] *Id.* Quite the opposite, in *Dupree*, the Court held that § 4B1.2(b) was unambiguous and did not include inchoate offenses. *Dupree*, 57 F.4th at 1279. Thus, Amendment 822 did not "clarif[y] a meaning that was inherent in the original Guideline."

[12] The pre-amendment Guideline allowed for an increase "if an express threat of death was made." *Summers*, 176 F.3d at 1330 (quoting U.S.S.G. § 2B3.1(b)(2)(F) (1995)). Summers committed a robbery using a note that stated, "I've got a gun, give me $500." *Id.* The amendment removed the word "express." *Id.*

[13] In *Brown*, the Eleventh Circuit concluded that the fourth factor weighed in favor of a clarifying change even though Amendment 832 abrogated circuit precedent. 2026 WL 3023730, at *7. But the abrogated precedent itself acknowledged reservations about the Circuit's existing interpretation and explained that the prior-precedent rule compelled that interpretation. *See United States v. Deleon*, 116 F.4th 1260, 1261 (11th Cir. 2024). Here, by contrast, the Eleventh Circuit concluded that the pre-amendment text was unambiguous and excluded the inchoate offenses. *Dupree*, 57 F.4th at 1279.

*Summers*, 176 F.3d at 1331. Instead, it changed the text to include offenses that *Dupree* held were unambiguously excluded.

Thus, the fourth factor weighs in favor of treating Amendment 822 as substantive.

On balance, the factors establish that Amendment 822 is substantive rather than clarifying. Although Amendment 822 moved commentary into the text and resolved a circuit split, several considerations weigh in favor of treating it as substantive: the nature of the circuit split, the Commission's failure to list the amendment as retroactive under § 1B1.10(d), and, most importantly, that it abrogated circuit precedent expressly holding that the pre-Amendment text unambiguously excluded inchoate offenses.

## IV. CONCLUSION

Because application of the current Guidelines would result in an ex post facto violation, the Court concludes that the 2021 Guidelines, which were in effect when Floyd and Smith committed the offenses, apply. The Eleventh Circuit's interpretation of U.S.S.G. § 4B1.2 of the 2021 Guidelines in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023), governs. Thus, for the purposes of sentencing in this case, the definition of "controlled substance offense" in § 4B1.2 does not include inchoate offenses. The Court further concludes that the portion of Amendment 822 incorporating inchoate offenses into § 4B1.2 is substantive, rather than clarifying, and therefore will not consider Amendment 822 when sentencing Floyd and Smith. Accordingly, the Government's objections to the Presentence Investigation Report (ECF 97; 98) are **OVERRULED.**

**SO ORDERED**, this 5th day of November, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT